UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| United States of America, | Case No. 17-cr-0229 (WMW/KMM) |
|---|---|
| Plaintiff, | |
| v. | **ORDER** |
| Jarmell Raymond Mayweather, | |
| Defendant. | |

---

A jury convicted Defendant Jarmell Raymond Mayweather on December 14, 2018, of possession with intent to distribute cocaine. Mayweather now moves for a *Franks* hearing and to vacate his conviction. (Dkts. 154, 177.) Also pending before the Court are three *pro se* motions filed by Mayweather, (Dkts. 160, 162, 164), and Plaintiff United States of America's motion to strike Mayweather's *pro se* motions, (Dkt. 170). For the reasons addressed below, each pending motion is denied.

## BACKGROUND

In the course of investigating Mayweather's offense of conviction, law enforcement officers obtained search warrants in March 2016 for Mayweather's residence and vehicle. During the search of these locations, law enforcement officers seized cocaine and other drug paraphernalia. Mayweather filed a pretrial motion to suppress the evidence obtained from these searches, arguing that probable cause did not support the search warrants for either his residence or his vehicle. The Court adopted the magistrate judge's recommendation to deny Mayweather's motion.

Mayweather now seeks a post-trial evidentiary hearing to challenge the March 2016 search warrants, arguing that the search warrant affidavit contains nine material misrepresentations or omissions. Mayweather also moves to vacate his conviction on the ground that the United States failed to disclose exculpatory evidence, in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). The United States opposes both motions and moves to strike several other post-trial motions that Mayweather filed *pro se*.

## ANALYSIS

### I. Mayweather's Motion for a *Franks* Hearing

Mayweather seeks an evidentiary hearing to challenge the March 2016 warrants used to search his home and his vehicle. An affidavit supporting a search warrant is presumed truthful. *Franks v. Delaware*, 438 U.S. 154, 164-65 (1978). But a defendant may challenge a search warrant on the grounds that the probable cause determination in the warrant was based on an affidavit that contains a deliberate falsehood or reckless disregard for the truth. *Id.* at 171. At the defendant's request, a district court must hold a *Franks* hearing if the defendant makes a "substantial preliminary showing" that (1) the search warrant affiant "deliberately or recklessly included a false statement in, or omitted a true statement from," the search warrant affidavit; and (2) the affidavit would not establish probable cause if the allegedly false information were ignored or the omitted information were included. *United States v. Snyder*, 511 F.3d 813, 816 (8th Cir. 2008). To make a "substantial preliminary showing," a defendant must offer "specific allegations along with supporting affidavits or similarly reliable statements." *United States v. Gonzalez*, 781 F.3d 422, 430 (8th Cir. 2015) (internal quotation marks omitted).

Certain motions, including motions to suppress evidence based on an alleged *Franks* violation, must be made before trial "if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits." Fed. R. Crim. P. 12(b)(3)(C); *accord United States v. Frazier*, 280 F.3d 835, 845 (8th Cir. 2002) (recognizing that a *Franks* issue "*must* be raised before trial"). If a party fails to file a timely pretrial motion, the party waives that issue. *United States v. Trancheff*, 633 F.3d 696, 697 (8th Cir. 2011). A district court may, in its discretion, consider an untimely motion *only* when the party shows good cause for the delay, "which requires a showing of cause and prejudice." *United States v. Paul*, 885 F.3d 1099, 1104 (8th Cir. 2018) (internal quotation marks omitted); *accord* Fed. R. Crim. P. 12(c)(3).

Mayweather identifies nine alleged misrepresentations or omissions in the March 10, 2016 search warrant affidavit. The United States contends that Mayweather waived each of these arguments by not raising them before trial and that Mayweather has not shown good cause to excuse the delay. Even if the Court excuses Mayweather's waiver, the United States argues, he has not made the "substantial preliminary showing" necessary to obtain a *Franks* hearing.

Most of the alleged factual misrepresentations or omissions identified in Mayweather's motion were known to Mayweather long before trial began. At least 11 months before trial, Mayweather learned details pertaining to phone contacts between himself and a CRI, including cell phone extraction reports and the fact that a March 2016 call was not recorded. In August 2018, more than 4 months before trial, Mayweather learned that law enforcement officers had obtained an order authorizing them to install a

3

tracking device on Mayweather's vehicle. Mayweather also learned in August 2018 that law enforcement officers had been investigating a known drug trafficker as early as October 2015. To the extent that Mayweather's motion relies on these facts to argue that a *Franks* violation occurred, the arguments are untimely and, therefore, waived.[1]

The Court may excuse Mayweather's waiver "only upon a showing of 'good cause,' which requires a showing of cause and prejudice." *United States v. Fry*, 792 F.3d 884, 888 (8th Cir. 2015). Mayweather's motion makes no attempt to establish good cause for his delay in bringing the motion. In his reply brief, Mayweather vaguely asserts that his motion "establishes 'good cause' for any delay in filing," but makes no specific argument to support this assertion.[2] Because Mayweather has not established good cause for his delay, the Court will not excuse his waiver of the *Franks* arguments that he did not raise before trial.

Two of Mayweather's *Franks* arguments, however, have not been waived. First, Mayweather argues that the payment form for the March 2016 controlled buy contains

---

[1] Several of Mayweather's arguments arise from alleged mischaracterizations or omissions that should have been evident to him on the face of the search warrant affidavit. For example, Mayweather argues that the search warrant affidavit mischaracterizes an aspect of his criminal history and fails to reference the amount of money involved in the March 2016 controlled buy. Because the bases for these arguments were available to Mayweather before trial, these arguments also are waived.

[2] Construed liberally, Mayweather's briefs seem to suggest that "good cause" exists here because, although some of the facts underlying his motion were available to him before trial, other details that Mayweather learned during and after trial caused him to view those earlier facts in a new light. But for the reasons addressed below, the details that Mayweather learned during and after trial do not satisfy Mayweather's burden to make a "substantial preliminary showing" that he is entitled to a *Franks* hearing.

4

notations that are inconsistent with the search warrant affidavit.[3] Second, Mayweather relies on trial testimony to argue that the search warrant affidavit falsely or misleadingly describes the CRI's reliability.

The controlled buy payment form includes the following notations: "1 oz coke buy 3.8.2016" and "No Go $ Returned but got dope #60." According to Mayweather, the inconsistencies between these notations cast doubt on whether the CRI did, in fact, purchase cocaine from Mayweather as reflected in the search warrant affidavit. But the first notation reflects that the CRI purchased cocaine, which is consistent with the cover page of the payment form, the description of the March 2016 controlled buy in the search warrant affidavit, and the testimony at trial. The second notation, by contrast, reflects that money was returned to the CRI. But this notation is consistent with the trial testimony of Detective Cory McLouden, the law enforcement officer who prepared the payment form. Detective McLouden testified that the CRI obtained cocaine from Mayweather during an earlier February 2016 controlled buy, but Mayweather did not accept the buy money during *that* transaction because Mayweather indicated that he owed money to the CRI. Thus, neither of these notations supports the requisite substantial preliminary showing—namely, that the search warrant affidavit included a false statement or misleading omission.

Mayweather argues that the payment form contradicts the search warrant affidavit in one other respect. Whereas the search warrant affidavit indicates that law enforcement

---

[3] This payment form is titled "Northwest Metro Drug Task Force Payment for Evidence and Information" and includes details about the March 2016 controlled buy. The United States concedes that Mayweather did not obtain a copy of this payment form until after trial.

5

officers followed Mayweather to his residence after the March 2016 controlled buy, Mayweather contends that the payment form reflects that law enforcement officers followed Mayweather to another individual's residence on Cedar Avenue South. But Mayweather misreads the payment form. Although the payment form refers to an individual "who lives" at an address on Cedar Avenue South, the payment form does not suggest that Mayweather drove to that address. As such, the payment form does not contradict the search warrant affidavit.

Finally, based on Detective McLouden's trial testimony, Mayweather argues that the search warrant affidavit misrepresents facts pertaining to the reliability of the CRI who assisted in the investigation. As relevant here, Detective McLouden testified that he was the CRI's "exclusive handler" with respect to the investigation of Mayweather and that their working relationship began in February 2016. According to Mayweather, Detective McLouden's testimony contradicts the following description of the CRI contained in the search warrant affidavit:

> This CRI has provided information to your affiant that has been accurate and reliable. This information has always been independently corroborated and found to be true and accurate by your affiant and other law enforcement officers. This CRI has also made controlled buys of controlled substances under the direction and control of your affiant.

Contrary to Mayweather's argument, Detective McLouden's trial testimony does not contradict his description of the CRI in the search warrant affidavit. That Detective McLouden was the CRI's "exclusive handler" and the CRI's first controlled buy occurred in February 2016 does not mean that law enforcement officers could not have corroborated the accuracy and reliability of the information provided by the CRI. Mayweather also

provides no basis for his argument that the search warrant affidavit falsely describes the CRI as having made controlled buys of controlled substances in the past. Indeed, the record reflects that the CRI was involved in at least two controlled buys, one in February 2016 and another in March 2016, both of which occurred before the search warrant affidavit was prepared. And Detective McLouden's testimony explains why the CRI was identified as a "CI" when participating in the February 2016 controlled buy—because "at that point," in February 2016, the confidential informant had not yet "graduated" to the status of CRI. Mayweather has not demonstrated that the search warrant affidavit is false or misleading with respect to the reliability of the CRI or the information obtained from the CRI.

In summary, to the extent that Mayweather advances *Franks* arguments that are not waived as untimely, he has not made the requisite substantial preliminary showing that the search warrant affidavit included a false statement or misleading omission. Accordingly, his motion for a *Franks* hearing is denied.

## II. Mayweather's Motion to Vacate Conviction

Mayweather also moves to vacate his conviction on the ground that the United States failed to disclose exculpatory evidence, in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). In particular, Mayweather challenges the timeliness of the August 3, 2018 disclosure by the United States that law enforcement officers had obtained an order authorizing them to install a tracking device on Mayweather's vehicle in January 2016. According to Mayweather, because information pertaining to this tracking device is exculpatory, the United States should have provided such evidence to Mayweather on or before its September 26, 2017 disclosure deadline.

7

The United States "must disclose any evidence both 'favorable to an accused' and 'material either to guilt or to punishment.' " *United States v. Whitehill*, 532 F.3d 746, 753 (8th Cir. 2008) (quoting *Brady*, 373 U.S. at 87). Disclosure of *Brady* evidence need not occur before trial, so long as "the information is furnished before it is too late for the defendant to use it at trial." *United States v. Almendares*, 397 F.3d 653, 664 (8th Cir. 2005). To establish a *Brady* violation, a defendant must show that the United States suppressed evidence that was favorable to the defendant and that the suppressed evidence was material. *United States v. Tate*, 633 F.3d 624, 630 (8th Cir. 2011). To demonstrate materiality, a defendant "must show there is a reasonable probability that if the allegedly suppressed evidence had been disclosed at trial the result of the proceeding would have been different." *Id.* The burden to establish that a *Brady* violation occurred rests with the defendant. *Masten v. United States*, 752 F.3d 1142, 1146 (8th Cir. 2014).

It is undisputed that the United States disclosed the tracking device application and order to Mayweather more than 4 months before trial. As such, Mayweather cannot demonstrate that the United States suppressed this evidence. It is true that the location data collected from the tracking device was not provided to Mayweather before trial. The United States contends that it had no affirmative obligation to provide this data because it was stored on third-party servers and was not in the possession of the United States. *See United States v. Heppner*, 519 F.3d 744, 750 (8th Cir. 2008) (observing that "*Brady* does not require the government to discover information not in its possession"). But even if this information had been in the possession of the United States, Mayweather does not demonstrate that this evidence would have been material to his defense at trial.

8

Mayweather speculates that this location data may cast doubt as to whether the March 2016 controlled buy occurred. But "mere speculation that materials may contain exculpatory evidence is not . . . sufficient to sustain a *Brady* claim." *United States v. Wadlington*, 233 F.3d 1067, 1076-77 (8th Cir. 2000) (internal quotation marks omitted). Notably, the United States did not present evidence relating to the March 2016 controlled buy during its case-in-chief, nor did Mayweather. Moreover, the facts underlying the controlled buy were not essential to any element of the charged offense. In contrast, the United States presented at trial substantial other evidence that pertained directly to the elements of the offense. And Mayweather has not demonstrated that any of the location data would contradict the evidence of the March 2016 controlled buy that the United States presented during its rebuttal case. Instead, he merely speculates that it *might* contradict that evidence.[4]

Because Mayweather has not established that the location data would have been either favorable to his defense or material to the outcome of the trial, Mayweather's motion to vacate his conviction based on an alleged *Brady* violation is denied.

**III.     Mayweather's *Pro Se* Motions and United States's Motion to Strike**

Mayweather also filed three motions *pro se*—a *Franks* motion, a *Brady* motion, and a motion to represent himself. The United States moves to strike Mayweather's *pro se* motions.

---

[4]     The Court is mindful that the location data no longer exists, as the United States concedes that this data was not retained by the third-party supplier of the tracking device used on Mayweather's vehicle. The absence of this location data would not preclude Mayweather from presenting other evidence or argument demonstrating that he was not at the locations ascribed to him by the evidence presented at trial. Yet he has not done so.

9

A "district court has no obligation to entertain *pro se* motions filed by a represented party." *United States v. Pate*, 754 F.3d 550, 553 (8th Cir. 2014) (internal quotation marks omitted). Mayweather is represented by counsel. Moreover, Mayweather's *pro se Franks* and *Brady* motions are largely duplicative of the *Franks* and *Brady* motions filed by defense counsel. Nonetheless, in the interests of justice and judicial economy, the Court now considers Mayweather's *pro se Franks* and *Brady* motions.

Mayweather's *pro se Franks* motion is, in all material respects, identical to the *Franks* motion filed by defense counsel. Mayweather raises no issues or arguments that materially differ from those raised by his attorney. And nothing in his *pro se* motion warrants a different conclusion than that reached in Part I of this Order. Accordingly, Mayweather's *pro se Franks* motion is denied.

With respect to Mayweather's *pro se Brady* motion, much of the information and evidence that are the subject of Mayweather's arguments were available to Mayweather before or during trial, including the tracking device application and cell phone extraction reports. As such, this evidence was not "suppressed," which is a prerequisite to establishing that a *Brady* violation occurred. *See Tate*, 633 F.3d at 630; *see also Almendares*, 397 F.3d at 664 (explaining that *Brady* evidence need not necessarily be disclosed *before* trial so long as it is not disclosed too late for the defendant to use it at trial). Although the tracking device location data was not disclosed to Mayweather before trial, Mayweather has not demonstrated that this nondisclosure resulted in a *Brady* violation for the reasons addressed in Part II of this Order. The same reasoning applies to the controlled buy payment form—Mayweather has not established that this evidence would

have been either favorable to his defense or material to the outcome of the trial, for the reasons addressed herein. The remainder of Mayweather's *Brady* arguments involve evidence that he only *speculates* could be material and favorable—if the evidence even exists. Such speculation is insufficient to establish a *Brady* violation. *See Wadlington*, 233 F.3d 1067, 1076-77. For these reasons, Mayweather's *pro se Brady* motion is denied.[5]

Finally, Mayweather seeks permission to discharge his attorney and represent himself, primarily relying on disagreements with his attorney, which are tactical in nature, that pertain to the pending *Franks* and *Brady* motions. To the extent that Mayweather seeks to represent himself as to these motions, his motion to discharge his attorney and represent himself is denied as moot as the Court has considered and ruled on each of the pending *Franks* and *Brady* motions on the merits.

It is unclear whether Mayweather also seeks to discharge his attorney and represent himself in connection with his sentencing. The United States Constitution entitles Mayweather to the assistance of counsel at his sentencing hearing. *See* U.S. Const. amend. VI; *McClain v. Swenson*, 435 F.2d 327, 332 (8th Cir. 1970). A defendant in a criminal matter has the right to be represented by an attorney or to represent himself or herself, "but a defendant does not have a constitutional right to hybrid representation." *United States v. Summage*, 575 F.3d 864, 876 (8th Cir. 2009) (internal quotation marks omitted) (citing *Faretta v. California*, 422 U.S. 806, 807 (1975) and *Gideon v. Wainwright*, 372 U.S. 335,

---

[5] Mayweather also speculates that Court Exhibit 2, which is a police report that the United States produced to defense counsel during trial, must have been fabricated by the United States during a recess because it contains misspellings and lacks certain identifying information. Mayweather provides no reasonable factual support for this grave accusation.

344 (1963)). Mayweather's *Faretta* motion does not clearly request to proceed *pro se* at the upcoming sentencing proceedings, and his more *recent* submissions suggest that he continues to work collaboratively with his appointed attorney and may be content to continue doing so. If it is Mayweather's intent to represent himself at sentencing, he may renew his *Faretta* motion at or before his sentencing hearing. The Court will not, however, permit Mayweather to proceed with "hybrid representation," in which he is represented by counsel in part and represents himself in part. *See id.* Mayweather's *Faretta* motion is, therefore, denied without prejudice.

For the foregoing reasons, Mayweather's *pro se* motions are denied, and the United States's motion to strike Mayweather's *pro se* motions is denied.

**ORDER**

Based on the foregoing analysis and all the files, records and proceedings herein, **IT IS HEREBY ORDERED**:

1. Defendant Jarmell Raymond Mayweather's motions for a *Franks* hearing, (Dkts. 154, 162), are **DENIED**.

2. Defendant Jarmell Raymond Mayweather's motions to vacate his conviction based on alleged *Brady* violations, (Dkts. 160, 177), are **DENIED**.

3. Defendant Jarmell Raymond Mayweather's motion to represent himself, (Dkt. 164), is **DENIED WITHOUT PREJUDICE**.

4. Plaintiff United States of America's motion to strike, (Dkt. 170), is **DENIED**.

Dated: August 12, 2019
s/Wilhelmina M. Wright
Wilhelmina M. Wright
United States District Judge